UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| EMPOWER OVERSIGHT<br>WHISTLEBLOWERS & RESEARCH,<br>601 King Street, Suite 200<br>Alexandria, VA 22313-3151<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br>950 Pennsylvania Avenue NW<br>Washington, DC 20530-0001,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:23-cv-95<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Empower Oversight Whistleblowers & Research brings this civil action against Defendant United States Department of Justice for declaratory and injunctive relief under the Freedom of Information Act, 5 U.S.C. § 552, and alleges:

1.      The Foreign Agents Registration Act (FARA), 21 U.S.C. §§ 611–621, generally "requires all agents of foreign principals to file detailed registration statements, describing the nature of their business and their political activities" in the United States. *Meese v. Keene*, 481 U.S. 465, 469 (1987). "The registration requirement is comprehensive, applying equally to agents of friendly, neutral, and unfriendly governments." *Id.* at 469–70.

2.      On March 6, 2018, nineteen members of Congress wrote a letter to the Attorney General regarding the Department's enforcement of FARA. *See* Exhibit A (attached). The members noted that the Department of Justice previously had determined that RTTV America, a state-sponsored media organization funded by the Russian government, needed to register under FARA. Yet the members noted that the Department had not required Al Jazeera, another state-sponsored media organization funded by Qatar, to do the same.

1

3.      The members found the lack of registration particularly troubling because Al Jazeera frequently produces content that undermines American interests.  For example, they noted that Al Jazeera often airs favorable coverage of foreign terrorist organizations, including Hamas, Hezbollah, Palestinian Islamic Jihad, and Jabhat al-Nursa, al-Qeadas branch in Syria.  And the members noted that Al Jazeera often broadcasts anti-American, anti-Semitic, and anti-Israel programs.

4.      In their letter, the members urged the Attorney General to enforce FARA and to protect U.S. national interests uniformly.

5.      On June 4, 2018, the Department sent a letter to Al Jazeera's lawyers explaining that a social-media-focused subsidiary, Al Jazeera Plus, may be obligated to register under FARA.

6.      A year later, on June 18, 2019, eight members of Congress wrote a letter to the Attorney General to express their disappointment in what they described as "lax and selective enforcement of the Foreign Agents Registration Act (FARA)."  Exhibit B at 1 (attached). The members identified recent reports regarding Al Jazeera Media Network, and they suggested that these reports raised "legitimate questions about whether [Al Jazeera] should register as a foreign agent."  *Id.*  The members requested that the Attorney General answer a series of questions about the Department's actions taken to assess whether Al Jazeera should register under FARA.

7.      On September 14, 2020, the Department sent a letter to Al Jazeera, explaining that Al Jazeeza Plus—a subsidiary based in the United States—"is obligated to register under the Foreign Agents Registration Act."  Jerry Dunleavy, *DOJ Orders Al Jazeera Plus to Register as a Foreign Agent of Qatar*, Wash. Examiner (Sept. 16, 2020) (quoting the letter).[1]

8.      On July 1, 2021, five Senators wrote a letter to the Attorney General to express their concern that Al Jazeera Plus (referred to as AJ+) "has willfully ignored DOJ's mandate and has failed to register as a foreign agent."  Exhibit C at 2 (attached).  "With AJ+'s refusal to register

---

[1] https://www.washingtonexaminer.com/news/doj-orders-al-jazeera-plus-to-register-as-a-foreign-agent-of-qatar

under FARA," the Senators worried that "agents of the Qatari government continue to operate in the United States in violation of the law." *Id.* The Senators noted that Al Jazeera had created a new media platform, referred to as "Rightly," and that they believed that Al Jazeera Network needed to register under FARA. *Id.* "Accordingly," the Senators stated that "it is imperative for DOJ to explain what, if any, steps it has taken to enforce the law and require Al Jazeera Media Network, AJ+ and Rightly to register under FARA." *Id.*

9.      As of January 2022, Empower Oversight understands that the Department has not entirely responded to these congressional oversight letters.

## PARTIES

10.      Plaintiff Empower Oversight is a nonpartisan, nonprofit educational organization dedicated to enhancing independent oversight of government and corporate wrongdoing. Empower Oversight works to help insiders safely and legally report waste, fraud, abuse, corruption, and misconduct to the proper authorities, and it seeks to hold those authorities accountable to act on such reports by, among other means, publishing information concerning the same.

11.      Defendant United States Department of Justice is a government "agency" under 5 U.S.C. § 552(f)(1). The Department has possession, custody, and control of records requested by Empower Oversight under FOIA.

## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

13.      Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

14.      Assignment to the Alexandria Division is proper under Local Civil Rule 3.

## BACKGROUND

### Empower Oversight's FOIA Request

15.      Since the earliest days of our nation, "openness in government has always been thought crucial to ensuring that the people remain in control of their government." *In re Sealed*

*Case*, 121 F. 3d 729, 749 (D.C. Cir. 1997).  The Freedom of Information Act thus provides the people with the opportunity to acquire "adequate information to evaluate federal programs and formulate wise policies."  *Soucie v. David*, 448 F.2d 1067, 1080 (D.C. Cir. 1971).

16.      On January 28, 2022, Empower Oversight filed with the Department a request for records under FOIA.  Exhibit D (attached).  Empower Oversight seeks agency records related to:

- the Justice Department's receipt of, discussions related to, processing of, and response to all Congressional correspondence regarding Al Jazeera or any of its affiliates and FARA, including the March 6, 2018, June 18, 2019, and July 1, 2021 congressional oversight letters cited above; and

- communications regarding FARA and Al Jazeera (or its affiliates) between the Justice Department and DLA Piper (or any other representative of Al Jazeera, its affiliates, or the Government of Qatar), including the June 4, 2018 and September 14, 2020 Justice Department letters referenced above.

*Id.* at 3 (Records Request).  Empower Oversight addressed its request to two components within the Department of Justice:  the Office of Information Policy and the National Security Division. *Id.* at 1.

17.      Empower Oversight requested that the Department search for responsive records within the National Security Division, the Office of the Attorney General, the Office of the Deputy Attorney General, the Office of the Associate Attorney General, and the Office of Legislative Affairs.  Ex. D at 3.  And it requested "expedited production" of all responsive records.  *Id.*

18.      As of January 28, 2022—the date that Empower Oversight submitted its request to the Department—Empower Oversight noted that the Department "appears to have been entirely unresponsive to the congressional oversight letters on this issue."  *Id.*   Empower Oversight explained that the "public has a right to know why the Justice Department has failed to enforce FARA in this instance and failed to be responsive to congressional oversight on this topic."  *Id.*

DOJ's Responses to Empower Oversight's FOIA Request

19.     On February 2, 2022, the Office of Information Policy acknowledged receipt of Empower Oversight's FOIA Request and assigned a tracking number to the request, "FOIA-2022-00692." Exhibit E (attached). Based on the information provided, the Office of Information Policy determined that Empower Oversight's "request for expedited processing . . . should be denied." *Id.* at 1. Nevertheless, the Office explained that Empower Oversight's request "has been assigned to an analyst" and that "processing of it has been initiated." *Id.*

20.     To the extent that Empower Oversight's "request requires a search in another Office, consultations with other Department components or another agency, and/or involves a voluminous amount of material," the Office of Information Policy stated that the request "falls within 'unusual circumstances.'" *Id.* (quoting 5 U.S.C. § 552 (a)(6)(B)(i)–(iii)).

21.     "Additionally," the Office of Information Policy noted that Empower Oversight "may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer." Ex. D at 2.

22.     On March 18, 2022, the National Security Division acknowledged receipt of Empower Oversight's FOIA Request in an email. Exhibit F (attached). The Division assigned a tracking number to the request, NSD FOIA #22-099. *See id.*

23.     The National Security Division did not directly state that "unusual circumstances" exist or that it would require additional time to process Empower Oversight's request. 5 U.S.C. § 552(a)(6)(B)(i). Instead, the National Security Division noted that, because of "the COVID-19 public health emergency, the NSD FOIA staff is teleworking full time." Ex. F at 1. "FOIA operations" at the Division "have been diminished" while staff members are teleworking, and the Division explained that "FOIA intake and FOIA processing will be slower than normal." *Id.*

24.     On March 14, 2022, the Office of Information Policy advised Empower Oversight that it had "initiated records searches in response" to Empower Oversight's request. Exhibit G (attached). "However," the Office asked whether Empower Oversight would be "amenable to

narrow the date range of [the] records search, which could speed-up the processing" of the request. *Id.*

25.    Empower Oversight did not respond to the email because the requested time period—"March 6, 2018, through the present"—specifically refers to the congressional oversight correspondence and the Department's response.  Ex. D at 4.

26.    Since March 14, 2022, Empower Oversight has received no further communication from the Department of Justice concerning FOIA-2022-00692 (Office of Information Policy) or NSD FOIA #22-099 (National Security Division).

27.    Empower Oversight has been forced to expend resources to prosecute this action as to its FOIA request.

DOJ's Responses to Other FOIA Requests

28.    In a separate FOIA lawsuit filed last year against the Department of Justice, Empower Oversight sought agency records concerning Special Counsel John Durham's investigation, the DOJ's monetary commitment to continuing Special Counsel Durham's investigation., and DOJ's hiring of a particular individual.  *See Empower Oversight Whistleblowers & Research v. Dep't of Justice*, No. 1:22-cv-00190-PTG-IDD (Feb. 2, 2022) (Compl. Dkt. No. 1).

29.    In the previous lawsuit, Empower Oversight alleged that the Department had failed to comply with FOIA's statutory deadlines.  *See id.* (Compl. ¶¶ 51–62).  Empower Oversight had submitted a FOIA request on July 12, 2021, and another FOIA request on August 19, 2021, yet the Department failed to provide a determination for either request within twenty working days. Nor did the Department definitively state whether unusual circumstances existed to extend the twenty-day statutory deadline.

**STATUTORY BACKGROUND**

30.    FOIA strongly favors openness.  *DOJ v. Tax Analysts*, 492 U.S. 136, 142 (1989). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to

6

the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  As Congress "broadly conceived" the statutory purpose, *EPA v. Mink*, 410 U.S. 73, 79–80 (1973), "disclosure, not secrecy, is the dominant objective of the Act," *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976).

31.     FOIA imposes certain timeliness requirements.  After an agency receives a valid request for information, it must respond to that request within twenty days (exempting Saturdays, Sundays, and holidays) by notifying the requester of its "determination." 5 U.S.C. § 552(a)(6)(A)(i)(I).  To comply with this statutory requirement, the determination "must be more than just an initial statement that the agency will generally comply with a FOIA request and will produce non-exempt documents and claim exemptions in the future." *CREW v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013).  At a minimum, to make a proper "determination," the agency instead must "(i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Id.*

32.     In certain circumstances, an agency may provide notice to the requester that "unusual circumstances" merit additional time—up to an additional ten working days—to render a determination.  5 U.S.C. § 552(a)(4)(viii)(II)(aa).  If the agency provides notice of unusual circumstances, it also must provide the requester "an opportunity to arrange with the agency an alternative time frame for processing the request." *Id.* § 552(a)(6)(B)(ii).

33.     "Congress adopted the time limit provision in the FOIA 'in order to contribute to the fuller and faster release of information, which is the basic objective of the Act.'" *Oglesby v. Dep't of the Army*, 920 F.2d 57, 64 n.8 (D.C. Cir. 1990) (quoting H.R. Rep. No. 876, 93rd Cong., 2d Sess. (1974)).  FOIA does not require the agency to produce responsive records within the 20-day statutory time limit, but the agency must *respond to* (i.e., provide a determination regarding) a request within the deadline.  No agency may ignore a valid request.  If an agency fails to comply

with the statutory deadlines, the requester "shall be deemed to have exhausted his administrative remedies." 5 U.S.C. § 552(a)(6)(C)(i).

34. After an agency responds to a request, it must make records "promptly available" to the requester. *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 290 (4th Cir. 2004) (quoting 5 U.S.C. § 552(a)(3)(A)).

35. FOIA does not assign a particular timeframe for an agency to comply with the statutory requirement to make documents "promptly available." Depending on the circumstances, this requirement "typically would mean within days or a few weeks of a 'determination,' not months or years." *CREW*, 711 F.3d at 188.

36. An agency responding to a valid request for records "shall make reasonable efforts to search for [such] records." 5 U.S.C. § 552(a)(3)(C). Courts generally consider an agency's search to be "adequate" if the agency "has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). The agency need not "search every file where a document could possibly exist" because courts instead consider whether the search was reasonable "in light of the totality of the circumstances." *Rein v. USPTO*, 553 F.3d 353, 364 (4th Cir. 2009).

**CLAIMS FOR RELIEF**
**Count I**
**Failure to Comply with Statutory Deadlines in Violation of 5 U.S.C. § 552(a)(6)**

37. Empower Oversight realleges and incorporates by reference each of the foregoing allegations contained in paragraphs 1 through 36, as if fully set forth here.

38. To date, neither the Office of Information Policy nor the National Security Division at the Department of Justice have provided a final determination as to the FOIA Request submitted by Empower Oversight on January 28, 2022.

39. More than twenty working days have passed since the Office of Information Policy and the National Security Division acknowledged receipt of the request. *See supra* ¶¶ 18, 21; *see also* Exs. E, F.

40.     FOIA requires the Department to have provided a final determination within 20 working days of Empower Oversight's request.  The Department may extend the 20-day period in the event of "unusual circumstances," as defined by 5 U.S.C. § 552(a)(6)(B)(iii), for a maximum of 10 working days, but it must specify the unusual circumstances for such extension and the date on which a determination is expected, *see id.* §§ 552(a)(4)(A)(viii)(II)(aa), 552(a)(6)(B)(i-ii); *see also* 28 C.F.R. § 16.5.

41.     Even assuming unusual circumstances existed, the Department has not provided a final determination within 30 working days of Empower Oversight's request.

42.     In addition, the Department failed to identify a date by which it expected to render a determination in the event of such unusual circumstances, also in violation of FOIA.  5 U.S.C. § 552(a)(4)(viii)(II)(aa); *see also* 28 C.F.R. § 16.5(c).

43.     The Department thus failed to make the statutorily required determination as to Empower Oversight's FOIA request, in violation of 5 U.S.C. § 552(a)(6).

44.     Empower Oversight constructively has exhausted all administrative remedies required by FOIA.  *See* 5 U.S.C. § 552(a)(6)(C)(i).

45.     Empower Oversight is entitled to declaratory and injunctive relief in connection with the DOJ's unlawful failure to make a determination as to its Request.

46.     Although a party may obtain relief from a federal agency as to a specific FOIA request, the party still may assert "a claim that an agency *policy or practice* will impair the party's lawful access to information in the future."  *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) (court's emphasis).  "The fact that the practice at issue is informal, rather than articulated in regulations or an official statement of policy, is irrelevant" in determining whether a party may maintain a challenge to the agency's policy or practice.  *Id.*

47.     The Department of Justice has maintained an impermissible policy or practice of not complying with FOIA's statutory deadlines.  Empower Oversight has suffered—and will continue to suffer—continuing injury because of the Department's policy or practice.  Indeed, the

9

Department's policy or practice has impaired Empower Oversight's lawful right to access agency records under FOIA.

**Count II**
**Unlawful Withholding of Agency Records in Violation of 5 U.S.C. § 552(a)(3)**

48.      Empower Oversight realleges and incorporates by reference each of the foregoing allegations contained in paragraphs 1 through 36, as if fully set forth here.

49.      FOIA requires the Department to process a valid request for agency records and "promptly" to provide responsive records, or the reasonably segregable portions of those records, to Empower Oversight.  5 U.S.C. § 552(a)(3)(B).  This statutory requirement "typically would mean within *days or a few weeks* of a 'determination,' *not months or years*."  CREW, 711 F.3d at 188 (emphasis added).

50.      As explained above, the Department has not made a determination as to Empower Oversight's FOIA Request.  Nor has the Department provided any responsive records or otherwise claimed that any responsive records are exempt from disclosure.

51.      This Court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld."  5 U.S.C. § 552(a)(4)(B).

**RELIEF REQUESTED**

**WHEREFORE**, Plaintiff prays that this Court:

A.      Declare that the Department's Office of Information Policy and National Security Division failed to make timely determinations on Empower Oversight's FOIA Request submitted 12 months ago on January 28, 2022, in violation of 5 U.S.C. § 552(a)(6)(A)(i);

B.      Declare that the Department failed to promptly provide records responsive to Empower Oversight's FOIA Request, in violation of 5 U.S.C. § 552(a)(3);

C.      Declare that the Department has maintained an impermissible policy or practice of not complying with the FOIA's statutory deadlines;

D.   Order the Department's Office of Information Policy and National Security Division to immediately conduct reasonable searches for all records responsive to Empower Oversight's FOIA Request, as required by 5 U.S.C. § 552(a)(3)(C);

E.   Order the Department's Office of Information Policy and National Security Division to immediately provide determinations on Empower Oversight's FOIA Request, as required by 5 U.S.C. § 552(a)(6)(A)(i);

F.   Order the Department's Office of Information Policy and National Security Division to promptly disclose to Empower Oversight all responsive, non-exempt records in response to its FOIA Request, as required by 5 U.S.C. § 552(a)(3);

G.   Award Empower Oversight its costs and reasonable attorney's fees incurred in this action under 5 U.S.C. § 552(a)(4)(E); and

H.   Grant such relief as the Court may deem just and proper.


January 20, 2023                                          Respectfully submitted,


                                              _____/s/_____
                                              Jeffrey S. Beelaert (VSB No. 81852)
                                              STEIN MITCHELL BEATO & MISSNER LLP
                                              901 15th Street NW, Suite 700
                                              Washington, DC 20005
                                              Tel: (202) 661-0923
                                              Fax: (202) 296-8312
                                              Email: jbeelaert@steinmitchell.com

                                              *Attorney for Plaintiff Empower Oversight*
                                              *Whistleblowers & Research*